# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| United Parcel Service, Inc.<br><br>　　　　Plaintiff,<br><br>v.<br><br>The Haggard Law Firm, P.A., and Edwinn Whitehead,<br><br>　　　　Defendants. | CIVIL ACTION NO.: _____ |

## COMPLAINT

Plaintiff United Parcel Service, Inc. ("UPS"), files this Complaint against Defendants Haggard Law Firm, P.A. ("Haggard Law"), and Edwinn Whitehead ("Whitehead") (collectively, "Defendants"), showing the Court as follows:

## INTRODUCTION

1. This action arises from a demand by Haggard Law, a plaintiffs' law firm, and its client, Whitehead, a personal injury claimant, that UPS repay (or pay *twice*) certain settlement monies because, allegedly, an unauthorized actor accessed Haggard Law's servers and/or other technology and diverted and stole certain monies UPS paid in accordance with a Confidential General Release and Settlement Agreement (hereinafter, the "Confidential Agreement").[1]

2. This loss (or theft) would not have occurred *but for* (a) the breach by Whitehead and Haggard Law of the Confidential Agreement and their failure to protect, safeguard, and keep confidential the settlement; and (b) Haggard Law's failure to implement proper information security measures and cybersecurity programs; failure to audit for security breaches; and, among

---

[1] UPS will file the Confidential Agreement under seal with the Court.

other things, their disclosure of confidential settlement information to an authorized actor. The loss (or theft) originated at Haggard Law and/or through its servers and/or other technology. Whitehead and his agent and counsel of record, Haggard Law, were in the best position to detect and thwart the loss (or theft), and they bear the risk of such loss (or theft).

3. UPS seeks (a) a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, that (i) Whitehead and Haggard Law breached the Confidential Agreement, (ii) UPS performed its obligations under the Confidential Agreement, and (iii) Whitehead, not UPS, bears the risk of loss; and (b) damages arising from Whitehead and Haggard Law's breach of contract and the breach of the implied covenant of good faith and fair dealing.

## THE PARTIES

4. UPS is an Ohio for-profit corporation with its principal place of business in Atlanta, Georgia.

5. Haggard Law is a plaintiffs' law firm with its principal place of business in Miami-Dade County, Florida. Haggard Law is Whitehead's agent and counsel of record, and it is a party to the confidentiality provision in the Confidential Agreement.

6. Haggard Law may be served with process at 330 Alhambra Circle in Coral Gables, Florida 33134.

7. Whitehead is a personal injury claimant and a party to the Confidential Agreement. He resides in Miami-Dade County, Florida.

8. Whitehead may be served with process through Haggard Law and/or at his place of residence at 10990 Southwest 138th Street in Miami, Florida 33176.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction under 28 U.S.C. § 1332, because there is

diversity of citizenship between the parties, and the matter in controversy, exclusive of interest, attorneys' fees, and costs, exceeds Seventy-Five Thousand Dollars ($75,000).

10. Venue is proper in this District under 28 U.S.C. § 1391 because Haggard Law and Whitehead reside in the District, and this is where a substantial part of the events or omissions giving rise to the Complaint occurred.

## FACTS

### *The Underlying Injury Lawsuit and Resulting Settlement*

11. According to its website (haggardlawfirm.com), Haggard Law provides the "highest level" of legal service to personal injury claimants.

12. Haggard Law advertises to the public that it has "delivered more than $1 billion in verdicts and settlements for [its] clients."

13. On February 7, 2020, Haggard Law, as agent of and counsel for Whitehead, filed suit against UPS and one other defendant in *Michelle Akins and Edwinn Whitehead, et al. v. Christine Ann Robb and United Parcel Service Inc.*, Case No. 2020-002952-CA-01, Circuit Court of the 11th Judicial Circuit, Miami-Dade County (the "Injury Lawsuit"); that suit arose from a two-vehicle accident in Miami-Dade County.

14. Haggard Law, for Whitehead, later participated in confidential settlement discussions with lawyers for UPS and its co-defendant (hereinafter, "defense counsel").

15. On October 14, 2020, Whitehead and UPS, as contracting parties, entered into the Confidential Agreement, which is a valid, binding, and enforceable contract.

16. The Confidential Agreement includes a strict confidentiality provision, which Haggard Law expressly "accepted and agreed to." Like Whitehead, Haggard Law is a contracting party to the confidentiality provision.

17. In the Confidential Agreement, Whitehead released all claims against UPS and the other defendant named in the Injury Lawsuit; and UPS, in turn, agreed to pay, for and on behalf of itself and its co-defendant, a confidential sum certain (hereinafter, the "Settlement Amount").

18. The Confidential Agreement required that Whitehead and UPS cooperate with each other and take all actions necessary to give full force and effect to the basic terms of the settlement. The Confidential Agreement also included a strict confidentially provision which applied to and governed the conduct of Whitehead and Haggard Law on matters involving the settlement. Under the terms of that provision, Whitehead and Haggard Law were required to protect, safeguard, and keep confidential the terms of settlement, and the Settlement Amount (hereinafter, the "confidential settlement information") and expressly agreed not to disclose confidential settlement information to third-parties. Strict confidentiality was a material term of settlement, and any failure to comply with it constituted a breach of the Confidential Agreement, allowing for injunctive relief, damages, or both.

19. The Confidential Agreement required that Whitehead dismiss the Injury Lawsuit within five (5) days of the date UPS paid the Settlement Amount.

20. After UPS and its insurer, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), paid the Settlement Amount, Whitehead, through Haggard Law, voluntarily dismissed the Injury Lawsuit with prejudice on October 29, 2021.

### *Alleged Loss (or Theft) of a Payment*

21. At the request of Whitehead and Haggard Law, UPS and its insurer, Liberty Mutual, divided the Settlement Amount into multiple separate payments (hereinafter, each a "Payment"; collectively, the "Payments"). The Payments constituted and equaled the Settlement Amount.

22. The Payments were directed by Haggard Law.

-5-

23. UPS relied on Whitehead and Haggard Law to maintain in strict confidence the confidential settlement information; and, knowing that Whitehead and Haggard Law were bound to strict confidentiality, UPS's defense counsel, acting in good faith, held telephone discussions, and exchanged emails, with Haggard Law about the same.

24. Between late September and October 25, 2021, Adam Finkel, Esq., and Michael Haggard, Esq., both lawyers at Haggard Law, engaged in multiple telephone discussions with UPS's defense counsel and sent numerous emails about the confidential settlement information, including payment details and logistics.

25. In late September 2021, Haggard Law, for Whitehead, requested that UPS make one of its Payments by electronic direct deposit (ACH) (the "ACH Payment") and advised that it (Haggard Law) would send payment instructions.

26. UPS's defense counsel received the ACH Payment instructions on October 13, 2021, directing UPS to send the ACH Payment to Haggard Law's trust account at a Wells Fargo Bank in Coral Gables, Florida. These instructions were sent by Mr. Finkel, from acf@haggardlawfirm.com. This is Mr. Finkel's real email account; the same account he registered with the Florida Bar and used throughout the Injury Lawsuit.

27. On October 19, 2021, UPS's defense counsel advised Haggard Law that UPS needed Whitehead or Haggard Law to complete a designated ACH Form and send either (a) the ACH Payment instructions on Wells Fargo letterhead, "which means it is verified," or (b) a voided check, "which will have the verified info on it."

28. Later that same day, Mr. Finkel, using his email address acf@haggardlawfirm.com, sent a completed ACH Form and the ACH Payment instructions on Wells Fargo letterhead. The instructions matched those Mr. Finkel had sent on October 13, 2021.

29. UPS issued the ACH Payment on October 26, 2021, as directed by Mr. Finkel's ACH Payment instructions. Over the next six days, Haggard Law and UPS's defense counsel communicated about the ACH Payment, with each asking the other about status and receipt.

30. On November 2, 2021, UPS's defense counsel asked Haggard Law by email if it had "checked with Wells Fargo" about receipt of the ACH Payment; this prompted a flurry of emails and telephone calls between the two, with Haggard Law ultimately claiming that the instruction to send the ACH Payment to a Wells Fargo account was fraudulent.

31. Accepting Haggard Law at its word, UPS promptly notified Wells Fargo, and UPS's own bank, JP Morgan, as well as others, including the FBI.

32. To date, Haggard Law has not produced evidence confirming the loss (or theft), explained how an unauthorized actor (or fraudster), if any, breached security to access Haggard Law's servers and/or other technology, came to hijack Mr. Finkel's real email account, and/or negated alternative explanations, including, among others, the possibility that the loss (or theft), if any, was an "inside job." If the loss (or theft) was not an inside job, Haggard Law (a) communicated with the unauthorized actor over a period of multiple weeks, and (b) ignoring the red flags, sent Haggard Law's ACH Payment instructions to him or her. The unauthorized actor then altered the ACH Payment Instructions and, using Mr. Finkel's real email account, sent fraudulent instructions to UPS's defense counsel.

33. On January 25, 2022, UPS's bank, JP Morgan, advised that Wells Fargo (a) had exhausted all efforts to recover the ACH Payment; and (b) recovered a majority but not all of it.

34. On February 8, 2022, UPS sent Whitehead a check for all the monies recovered from the ACH Payment deposited at Wells Fargo.

35. On information and belief, Whitehead, through Haggard Law, has now accepted

the recovered monies and deposited the same.

### *Whitehead Cannot Revive and Use the Injury Lawsuit,*
### *Which Has Been Dismissed With Prejudice, to Recover Lost Money*

36. On February 17, 2022, Whitehead, through Haggard Law, filed under seal a Motion to Enforce Settlement (the "Motion") against UPS in the Injury Lawsuit.

37. The Motion is improper because (a) the Injury Lawsuit had been dismissed with prejudice by Whitehead on October 29, 2021, divesting the court of jurisdiction; and (b) the necessary parties to any lost money dispute are not joined in the matter.

38. Even if the court in the Injury Lawsuit were to find that it had jurisdiction (which it does not), the parties necessary to render full and complete relief are not named as defendants. While the Motion argues that UPS "failed to deliver" the lost money, Whitehead, through Haggard Law, acknowledges in the Motion that multiple non-parties (including Haggard Law) are or may be liable, in whole or part. Despite this fact, Whitehead has taken the position that the court in the Injury Lawsuit should simply force UPS to pay twice, regardless of fault, responsibility, or liability. But Haggard Law is a necessary party to any lost money dispute, and it is not a party to the Injury Lawsuit. Whitehead's lost money dispute cannot be resolved without Haggard Law as a party defendant because Haggard Law, like Whitehead, is at fault, responsible, and liable.

39. UPS has objected to the Motion and filed this action to ensure that all parties necessary to resolution of the lost money dispute are named in one lawsuit.

### *The Alleged Theft Originated at Haggard Law and/or Through its Servers and/or Other*
### *Technology; Haggard Law Failed to Safeguard Confidential Settlement Information*

40. Having advertised to the public that it has "delivered more than $1 billion in verdicts and settlements for [its] clients," Haggard Law knew or should have known that it was, or would be, a target for unauthorized actors looking to divert some or much of its recoveries.

41. Mr. Haggard is the Managing Partner of Haggard Law.

42. Mr. Haggard specializes in "negligent security," among other areas of law, and claims to understand the "foreseeability of crime." He is a frequent speaker and attendee at security conferences that focus on physical security and cybersecurity threats.

43. Haggard Law was obligated to comply with multiple professional, ethical, and legal duties of care. Those duties require, among other things, that Haggard Law (a) use proper technology; (b) keep abreast of the benefits and risks associated with, and changes to, technology; (c) implement proper information security measures and cybersecurity programs; (d) maintain information security and cybersecurity awareness; (e) train, supervise, and monitor lawyers and staff about the same; (f) protect, safeguard, and keep confidential certain client information and other information; (g) audit for security breaches; and (h) prevent the unauthorized disclosure of confidential information, including confidential settlement information.

44. Haggard Law agreed in the Confidential Agreement not to disclose to third-parties, and to prevent the unauthorized disclosure of, confidential settlement information.

45. Had Haggard Law complied with its professional, ethical, and legal obligations, the alleged loss (or theft) would not have occurred. Had Haggard Law complied with the Confidential Agreement, the alleged loss (or theft) would not have occurred.

46. The loss (or theft) originated at Haggard Law and/or through its servers and/or other technology. Haggard Law was in the best position to detect and thwart the loss (or theft).

### *Whitehead Failed to Safeguard Confidential Information*

47. Whitehead agreed in the Confidential Agreement not to disclose to third-parties, and to prevent the unauthorized disclosure of, the confidential settlement information.

48. Had Whitehead and his agent and counsel of record, Haggard Law, complied with the Confidential Agreement, the loss (or theft) would not have occurred.

49. Whitehead breached the Confidential Agreement.

50. Whitehead bears the risk of such loss (or theft).

## COUNT I
## Declaratory Judgment

51. UPS restates Paragraphs 11 through 50 as if fully set forth herein.

52. On October 14, 2020, Whitehead and UPS, as contracting parties, entered into the Confidential Agreement, which is a valid, binding, and enforceable contract.

53. The Confidential Agreement includes a strict confidentiality provision, which Haggard Law expressly "accepted and agreed to." Like Whitehead, Haggard Law is a contracting party to the confidentiality provision.

54. UPS relied on Whitehead and Haggard Law to maintain in strict confidence the confidential settlement information; and, knowing that Whitehead and Haggard Law each was bound to strict confidentiality, UPS's defense counsel, acting in good faith, and after telephone discussions and emails with Haggard Law, accepted the ACH Payment instructions.

55. UPS paid the Settlement Amount, and this included the ACH Payment.

56. UPS performed its obligations under the Confidential Agreement.

57. Whitehead and Haggard Law breached the Confidential Agreement by (a) failing to take reasonable measures to protect, safeguard and keep confidential, and prevent the unauthorized disclosure of, the confidential settlement information, (b) failing to exercise ordinary care, and (c) filing the Motion.

58. Whitehead and his agent and counsel of record, Haggard Law, were in the best position to detect and thwart the loss (or theft), and they bear the risk of such loss (or theft)

59. An actual and present dispute exists between UPS, Whitehead, and Haggard Law. UPS is entitled to a declaration under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, that (a) Whitehead and Haggard Law breached the Confidential Agreement, (b) UPS performed its obligations under the Confidential Agreement, and (c) Whitehead, not UPS, bears the risk of loss.

### COUNT II
### Breach of Contract
### Against Whitehead and Haggard Law

60. UPS restates Paragraphs 11 through 50 as if fully set forth herein.

61. On October 14, 2020, Whitehead and UPS, as contracting parties, entered into the Confidential Agreement, which is a valid, binding, and enforceable contract.

62. The Confidential Agreement includes a strict confidentiality provision, which Haggard Law expressly "accepted and agreed to." Like Whitehead, Haggard Law is a contracting party to the confidentiality provision.

63. UPS relied on Whitehead and Haggard Law to maintain in strict confidence the confidential settlement information; and, knowing that Whitehead and Haggard Law each was bound to strict confidentiality, UPS's defense counsel, acting in good faith, and after telephone discussions and emails with Haggard Law, accepted the ACH Payment instructions.

64. UPS paid the Settlement Amount, and this included the ACH Payment.

65. UPS performed its obligations under the Confidential Agreement.

66. Whitehead and Haggard Law breached the Confidential Agreement by (a) failing to take reasonable measures to protect, safeguard and keep confidential, and prevent the unauthorized disclosure of, the confidential settlement information, (b) failing to exercise ordinary care, and (c) filing the Motion.

30938717v1

67. This breach and the resulting loss (or theft) of monies originated at Haggard Law and/or through the gateway of its servers and/or other technology.

68. Whitehead and his agent and counsel of record, Haggard Law, were in the best position to detect and thwart the loss (or theft), and they bear the risk of such loss (or theft)

69. As a direct and proximate cause of the breach, UPS has sustained damages, including incidental and consequential damages, in an amount to be proven at trial.

## COUNT III
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### Against Whitehead and Haggard Law

70. UPS restates Paragraphs 11 through 50 as if fully set forth herein.

71. Under Florida law, the implied covenant of good faith and fair dealing is a material term of every contract; this protects the reasonable expectations of contracting parties.

72. Whitehead and Haggard Law were obligated to comply with this covenant.

73. In accordance with the strict confidentiality provision in the Confidential Agreement, UPS reasonably expected that Whitehead and Haggard Law to take proper measures to protect, safeguard and keep confidential, and prevent the unauthorized disclosure of, the confidential settlement information.

74. Whitehead and Haggard Law breached the covenant, and this breach frustrated the very purpose of the strict confidentiality provision, depriving UPS of the benefit of its bargain.

75. As a direct and proximate cause of this breach, UPS has sustained damages, including incidental and consequential damages, in an amount to be proven at trial.

### DEMAND FOR JURY TRIAL

UPS demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, UPS prays that the Court order a trial by jury; that the Court enter a declaratory judgment in favor of UPS and damages against Whitehead and Haggard Law; and that the Court order such other relief as is just and proper.

Dated:  April 7, 2022.

HAWKINS PARNELL & YOUNG LLP

/s/ *Evelyn Fletcher Davis*
Evelyn Fletcher Davis
Florida Bar No. 0162744
edavis@hpylaw.com
303 Peachtree Street, N.E.
Suite 4000
Atlanta, Georgia 30308-3243
(404) 614-7400 – Telephone
(404) 614-7500 – Facsimile

*Counsel for Plaintiff, United Parcel Service, Inc.*

30938717v1